UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JAMES B. ALFORD, ET AL

VERSUS                                          CIVIL ACTION
                                                NO. 23-138-JWD-RLB
TAYLOR-SEIDENBACH, INC., ET AL

RULING AND ORDER

This matter is before the Court on the *Motion for Partial Summary Judgment* (Doc. 128) filed by defendant Union Carbide Corporation ("UCC"). Plaintiffs James B. Alford and Lillian A. Martin, individually and on behalf of James M. Alford (collectively, "Plaintiffs"), oppose the motion (Doc. 138). UCC did not file a reply. Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the *Motion for Partial Summary Judgment* is granted in part and denied in part.

I.    RELEVANT FACTUAL BACKGROUND[1]

James M. Alford ("Mr. Alford"), the original plaintiff in this case, was diagnosed with mesothelioma in 2022. (*SUMF*, Doc. 128-2 at 2, ¶ 13.) Mr. Alford worked for Noble Drilling Corporation ("Noble") where he mixed drilling mud on Noble's oil rigs. (*Id.* at 1–2, ¶¶ 2, 6.) He testified that he worked for Noble from 1973 to 1985. (*Id.* at 2, ¶ 3.) "The mud program on the Noble rigs, including specific materials to add to the drilling mud, was specified by a Chevron field engineer." (*Id.* at ¶ 5.) Mr. Alford testified that during his time at Noble, he used the drilling mud additives Visbestos and Flosal. (*Id.* at ¶ 6.)

---

[1] Unless otherwise indicated, when the Court cites to the *Statement of Uncontested Material Facts* ("*SUMF*") in support of a fact, that fact has been admitted by the opposing party. *See* M.D. La. Civ. R. 56(f).

UCC's asbestos product, Calidria, was used as a drilling mud additive and sold under the names "Visbestos" and "Super Visbestos," which were distributed by Montello. (*Id.* at ¶¶ 7–9.) Beginning in 1968, UCC placed language on the bags of its mud additives, saying "Caution, contains asbestos fibers, avoid creating dust, breathing asbestos dust may cause serious bodily harm." (*Id.* at ¶¶ 10–11.)

## II. RULE 56 STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial burden and must identify 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.' " *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted)).

However, "the movant 'need not *negate* the elements of the nonmovant's case.' " *Id.* (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc))). That is, "[a] movant for summary judgment need not set forth evidence when the nonmovant bears the burden of persuasion at trial." *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019) (citing *Celotex*, 477 U.S. at 323 ("we find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim.") (emphasis in original)). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Id.* (citing *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002)).

If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted).

Ultimately, "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (cleaned up). Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991) (internal citations omitted).

## III. DISCUSSION

### a. Conceded Claims

Defendant moved for partial summary judgment regarding Plaintiffs' claims for take-home exposure and for lost earnings and earning capacity. (Doc. 128-3 at 1–2.) Plaintiffs concede that these are not viable claims against UCC and agree to voluntarily dismiss them. (Doc. 138 at 2.) Therefore, UCC's *Motion for Partial Summary Judgment* is denied as moot as to the take-home exposure and lost earnings and earning capacity claims, and these claims will be dismissed.

### b.  Parties' Arguments

#### i.  *Motion for Partial Summary Judgment* (Doc. 128)

UCC first argues that the warnings that were on the packages of the drilling mud additives complied with Occupational Safety and Health Administration ("OSHA") standards during the time that Mr. Alford worked at Noble and thus, Plaintiffs cannot assert a failure to warn claim. (Doc. 128-3 at 2–3.) UCC looks to Mr. Alford's Social Security Earnings Statement and argues that there is only a record of Mr. Alford working for Noble in 1975 and from 1981 to 1987. (*Id.* at 3 (citing Doc. 128-5).) This is contrary to Mr. Alford's recollection that he worked for Noble continuously from 1973 to 1985. (*Id.*) UCC argues that during the time at issue, its products contained a warning stating, "Caution, contains asbestos fibers, avoid creating dust, breathing asbestos dust may cause serious bodily harm." (*Id.* (citing Doc. 128-7).) It contends that because Plaintiffs have not provided expert testimony that the warning was insufficient, there is no evidence supporting a claim for lack of warning or of sufficient warning. (*Id.* at 4.)

Next, UCC argues that because Mr. Alford did not identify Super Visbestos as a product that he used while working for Noble, any claims by Plaintiffs regarding Super Visbestos should be dismissed. (*Id.* at 5–6.) It asserts that Plaintiffs' experts have only opined regarding Visbestos, not Super Visbestos. (*Id.*) Therefore, there is no evidence that would support Plaintiffs' claims regarding Super Visbestos. (*Id.*)

Finally, UCC contends that there is no evidence that it failed to properly package its asbestos products. (*Id.* at 9.) It argues that Plaintiffs' experts have said "that the alleged potential exposures from such products came from <u>dumping</u> the material into a hopper, and not from handling or from the packaging." (*Id.* (emphasis in original) (citing Garza Dep., Doc. 128-12 at 36:3–14; Finkelstein Dep., Doc. 128-13 at 56:3–5).) These experts did not testify that the

packaging of the asbestos products was the cause of the exposure, and UCC asserts that these experts have admitted that there was no exposure due to the packaging. (*Id.* at 9–10.)

Although UCC requests dismissal of Plaintiffs' product supplier strict liability claim in the introduction of its *Motion for Partial Summary Judgment*, it did not brief the issue and did not request summary judgment on that ground at the end of the motion. (*Id.* at 2, 13.)

### ii. *Opposition* (Doc. 138)

First, Plaintiffs request that the Court deny UCC's motion as moot regarding the product supplier strict liability claim because UCC failed to support its argument. (Doc. 138 at 13–14.) They also object to the Social Security Earnings Statement as it is hearsay, unfairly prejudicial, likely to mislead the jury, and it lacks foundation. (*Id.* at 3.)

Next, Plaintiffs argue that there is a genuine issue of material fact regarding their failure to warn claim. (*Id.* at 14.) They assert that whether UCC's warning complied with OSHA standards is of no consequence in a state law negligence claim. (*Id.*) They say that OSHA does not "preempt or replace state law negligence claims . . . ." (*Id.*) "Moreover, rulings in this circuit have made clear that, at most, violation of certain statutes and regulations *may* constitute evidence of the standard of care." (*Id.* (emphasis in original) (citing *Dupre v. Chevron U.S.A., Inc.*, 20 F.3d 154, 157, n.13 (5th Cir. 1994)).)

Plaintiffs contend that there is evidence that UCC knew of the dangers of its Calidria asbestos and "failed to adequately warn its customers and end users, and in fact downplayed the hazards of Calidria in order to realize more profit." (*Id.* at 15.) They list examples of UCC's actions surrounding the warning label, including creating the "most innocuous" warning they could devise and omitting a cancer warning. (*Id.* at 15–16.) Plaintiffs say that UCC's knowledge of the danger

of asbestos and the level of warning given create a genuine issue of material fact as to the adequacy of the warning. (*Id.* at 16.)

Next, Plaintiffs argue that the request for summary judgment regarding Super Visbestos is improper. (*Id.*) They say that granting summary judgment as to Super Visbestos would not dismiss any claim or defense, thus the matter is not properly considered on summary judgment. (*Id.* at 17.) Plaintiffs assert that their claims are for negligence and strict liability for the "sale and supply of asbestos," and the distinction between names of products was not included in the pleadings. (*Id.*)

Even if the Court were to consider the argument, Plaintiffs contend that there is a genuine issue of material fact of whether Mr. Alford used Super Visbestos. (*Id.* at 19.) They say that although Mr. Alford only testified to using Visbestos, during much of the time that he worked at Noble, "Super Visbestos was the only 'Visbestos' product on the market in that time period." (*Id.* at 18 (citing Holton Dep., Doc. 138-5 at 48:9–49.5; 83:4–11; Holton Report, Doc. 138-28 at 10, 12).) Further, Mr. Alford worked at Noble over 40 years ago. (*Id.* at 18.) It would be reasonable, argue Plaintiffs, to infer that Mr. Alford was using Super Visbestos after 1981, when Super Visbestos was the only Calidria product with "Visbestos" in its name on the market. (*Id.*) They say this creates a disputed issue of fact that should be addressed by the factfinder. (*Id.*)

Finally, Plaintiffs argue that UCC's request to dismiss the failure to properly package claim is improper because the failure to properly package is simply an allegation supporting the negligence and strict liability claims. (*Id.*) If the Court were to consider UCC's argument, Plaintiffs assert that there is a genuine issue of material fact regarding whether the products were packaged properly. (*Id.*) They argue that the claim "encompass[es] more than simply 'the manner in which the bag was opened.' " (*Id.*) Mr. Alford testified that the stacking of the open bags of drilling mud additives would create dust in the air, which expert Ken Garza found could cause significant

6

exposure to asbestos. (*Id.* at 18–19 (citing Alford Dep., Doc. 138-25 at 43:1–44:4, 61:20–62:23; Doc. 138-26).)

    **c. Law and Analysis**

In sum, the Court will deny summary judgment as to the claims related to Super Visbestos and failure to warn. There is a genuine issue of material fact regarding whether Mr. Alford used Super Visbestos while working at Noble, and a reasonable jury could find that he was exposed to Super Visbestos. Further, there is a genuine issue of material fact of whether the warning placed on UCC's products was adequate, which is a question for the jury. A reasonable jury could find that the warning was inadequate. Summary judgment will be denied as to the product supplier's strict liability for UCC's failure to brief the argument. UCC did not respond to Plaintiff's argument to exclude the Social Security Earnings Statement, so it will not be considered on summary judgment. Finally, partial summary judgment will be granted as to Plaintiffs' failure to properly package claim because Plaintiffs have failed to present any evidence that the failure to properly package led to Mr. Alford's exposure to asbestos. This claim will be dismissed.

The parties do not dispute that Louisiana law applies. "When adjudicating claims for which state law provides the rules of decision, we are bound to apply the law as interpreted by the state's highest court." *Barfield v. Madison Cnty., Miss.*, 212 F.3d 269, 271–72 (5th Cir. 2000) (citing *Transcontinental Gas v. Transportation Ins. Co.*, 953 F.2d 985, 988 (5th Cir.1992)). "If the state's highest court has not spoken on the particular issue, 'it is the duty of the federal court to determine as best it can, what the highest court of the state would decide.' " *Id.* (quoting *Transcontinental Gas*, 953 F.2d at 988). Thus, "[o]ur task is to determine as best we can how the Louisiana Supreme Court would decide it." *Jorge-Chavelas v. Louisiana Farm Bureau Cas. Ins. Co.*, 917 F.3d 847, 850 (5th Cir. 2019) (cleaned up).

This case involves the alleged exposure to asbestos products between 1973 and 1985. The Louisiana Products Liability Act was not enacted until 1988 and does not apply to causes of action accruing before September 1, 1988. *Brown v. R.J. Reynolds Tobacco Co.*, 52 F.3d 524, 527 (5th Cir. 1995). Thus, it is not applicable to this case. *Id.* The Court must look to the law at the time of the injury. *Id.* The law on products liability during the time of Mr. Alford's alleged exposure was explained by the Louisiana Supreme Court in *Halphen v. Johns-Manville Sales Corp.* ("*Halphen I*"):

> There is general agreement upon the most basic principles of strict tort products liability. In order to recover from a manufacturer, the plaintiff must prove that the harm resulted from the condition of the product, that the condition made the product unreasonably dangerous to normal use, and that the condition existed at the time the product left the manufacturer's control. The plaintiff need not prove negligence by the maker in its manufacture or processing, since the manufacturer may be liable even though it exercised all possible care in the preparation and sale of its product.

484 So.2d 110, 113 (La. 1986) (citing *Bell v. Jet Wheel Blast*, 462 So.2d 166 (La.1985); *Hebert v. Brazzel*, 403 So.2d 1242 (La.1981); *DeBattista v. Argonaut-Southwest Ins. Co.*, 403 So.2d 26 (La.1981); *Hunt v. City Stores*, 387 So.2d 585 (La.1980); *Chappuis v. Sears, Roebuck & Co.*, 358 So.2d 926 (La.1978); *Weber v. Fidelity & Casualty Ins. Co. of New York*, 250 So.2d 754 (1971)).

### i. Product Supplier Strict Liability Claim

UCC mentioned the dismissal of Plaintiffs' Product Supplier Strict Liability claim in the introductory paragraph of its *Motion for Partial Summary Judgment* but did not brief the issue. The failure to brief an argument results in its waiver. *Payton v. Town of Maringouin*, No. 18-563, 2021 WL 2544416, at *26 (M.D. La. June 21, 2021) (deGravelles, J.) (citing *JMCB, LLC v. Bd. of Com. & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) (deGravelles, J.). Thus, the *Motion for Partial Summary Judgment* will be denied on this ground.

### ii. Social Security Earnings

Plaintiffs object to the admissibility of the Social Security Earnings Statement presented by UCC, and argue that it is hearsay, unfairly prejudicial, likely to mislead the jury, and that it lacks foundation. (Doc. 138 at 3.) UCC did not file a reply, and thus did not oppose Plaintiffs' arguments. Therefore, the argument is waived. *See Payton*, 2021 WL 2544416, at * 26. The Court will not consider the Social Security Earnings Statement (Doc. 128-5) on summary judgment.

### iii. Super Visbestos

UCC argues that because Mr. Alford did not identify Super Visbestos as a product that he used, Plaintiffs' claims related to it should be dismissed. (Doc. 128-3 at 5–6.) "Louisiana courts have employed a 'substantial factor' test to determine whether exposure to a particular asbestos-containing product was a cause-in-fact of a plaintiff's asbestos-related disease." *Rando v. Anco Insulations Inc.*, 08-1163 (La. 5/22/09), 16 So.3d 1065, 1091 (citing *Zimko v. Am. Cyanamid*, 03-0658 (La. App. 4 Cir. 6/8/05), 905 So.2d 465, 484). "[W]hether the defendant's conduct was a substantial factor is a question for the jury, unless the court determines that reasonable men could not differ." *Robertson v. Doug Ashy Bldg. Materials, Inc.*, 14-0141, p. 11 (La. App. 1 Cir. 12/23/14), 168 So.3d 556, 565 (citing *Borel v. Fibreboard Paper Prods. Corp.*, 493 F.2d 1076, 1094 (5th Cir. 1973)). *See also Zimko*, 905 So.2d at 484; *Torrejon v. Mobil Oil Co.*, 03-1426, p. 19 (La. App. 4 Cir. 6/2/04), 876 So.2d 877, 890.

Exposure to an asbestos product may be proven by circumstantial evidence. *Rando*, 16 So.3d at 1089–90; *Slaughter v. So. Talc Co.*, 949 F.2d 167, 172 (5th Cir. 1991). In *Martin v. American Petrofina, Inc.*, there was no direct evidence of what brand "mastics"—an asbestos product used as a weather protective coating—the plaintiff had used while working as a pipefitter, but there was testimony by other workers that the defendant's products were used more often than

others. 779 F.2d 250, 252 (5th Cir. 1985). The Fifth Circuit held that, considering this testimony, plus the plaintiff's testimony that he used "mastics" during his time working at the plant, the jury was reasonable in concluding that the plaintiff had been exposed to the defendant's product. *Id.*

Here, there is no direct evidence that Plaintiff was exposed to Super Visbestos during his time working for Noble. There is, however, circumstantial evidence supporting this claim. Mr. Alford testified that he used "Visbestos" during the entirety of his time working at Noble. (Alford Dep., Doc. 128-4 at 47:7–20.) Although there is some dispute between the parties as to when Mr. Alford worked for Noble, they agree that he worked between the years of 1981 and 1987. (Doc. 128-3 at 3; Doc. 138 at 1.) Michael Holton, UCC's industrial hygienist, stated in his report that "Montello discontinued supplying Visbestos in 1978." (Doc. 138-28 at 12.) After 1978, Super Visbestos was on the market. (Holton Dep., Doc. 138-5 at 68:19–21.) Both Visbestos and Super Visbestos use the same asbestos ingredient, Calidria. (Doc. 128-9 at 118:16–23.) Mr. Alford worked for Noble over 40 years ago, and the names of the products are similar. Therefore, it would be reasonable to infer that he did use Super Visbestos. Given Mr. Alford's testimony that he used Visbestos during the entirety of his employment at Noble and the availability of Visbestos and Super Visbestos at the same time, and the exclusive use of Super Visbestos during part of Mr. Alford's employment, a reasonable jury could find that Mr. Alford was exposed to Super Visbestos.

There is also circumstantial evidence that Mr. Alford was not exposed to Super Visbestos. Mr. Alford could not recall whether he had been in contact with a product called "Super asbestos." (Alford Dep., Doc. 128-4 at 179:22–24.) Mr. Alford testified that most of his work with Noble occurred on the Noble 24 oil rig, and Chevron's corporate representative, Charles Moak, "could not recall asbestos being used as a drilling mud additive during his time on Noble 24 from 1981

until 1984 and did not know if Visbestos was used on Noble 24." (Doc. 138-28 at 12.) A reasonable jury could infer that Mr. Alford was not exposed to Super Visbestos.

Plaintiffs have shown that there is a genuine issue of material fact regarding Mr. Alford's exposure to Super Visbestos. In considering a motion for summary judgment, this Court may not weigh the evidence or evaluate the credibility of witnesses. *International Shortstop, Inc.*, 939 F.2d at 1263. There is no direct evidence that Mr. Alford used Super Visbestos or not, nor is there direct evidence whether Noble used Super Visbestos during the time Mr. Alford was employed there or not. Plaintiffs have presented circumstantial evidence that supports a finding that Mr. Alford used Super Visbestos. This is a genuine issue of material fact. Viewing the evidence in the light most favorable to the non-movant, a reasonable jury could find in favor of Plaintiffs. Therefore, UCC's *Motion for Partial Summary Judgment* will be denied on this ground.

### iv.  Failure to Warn

UCC argues that because it had OSHA compliant warnings on its asbestos products starting in 1972, before Mr. Alford began working at Noble, it is entitled to summary judgment on the failure to warn claim. (Doc. 128-3 at 3–4.)

> Whether a particular warning was adequate is a question for the trier of fact. *Stapleton v. Kawasaki Heavy Industries, Ltd.*, 608 F.2d 571, 573 (5th Cir.1979); *Brownlee v. Louisville Varnish Co.*, 641 F.2d 397, 400 (5th Cir.1981); *Dougherty v. Hooker Chem. Corp.*, 540 F.2d 174, 179 (3d Cir.1976); *LeBouef v. Goodyear Tire & Rubber Co.*, 451 F.Supp. 253, 257 (W.D.La.1978); *Berry v. Coleman Systems Co.*, 23 Wash.App. 622, 596 P.2d 1365, 1369 (1979). The determination of whether a warning is adequate depends upon a balancing of considerations including, among other factors, the severity of the danger, *Marshall v. Beno Truck Equipment, Inc.*, 481 So.2d 1022, 1032, (La.App. 1st Cir.1985) writ den., 482 So.2d 620 (1986); the likelihood that the warning will catch the attention of those who will foreseeably use the product and convey the nature of the danger to them, *Andries v. General Motors*, 444 So.2d 1180, 1183 (La.1983); *Bituminous Casualty v. Black & Decker*, 518 S.W.2d 868, 872–73 (Tex.Civ.App.Ct.1974); *Spruill v. Boyle-Midway, Inc.*, 308 F.2d 79, 87 (4th Cir.1962); *Wolfe v. Ford Motor Co.*, 6 Mass.App. 346, 376 N.E.2d 143, 147 (1978); *Seley v. G.D. Searle, Inc.*, 67 Ohio St.2d 192, 423 N.E.2d 831, 837 (1981); the intensity and form of the warning, *Shell Oil v. Gutierrez*, 119 Ariz.

426, 581 P.2d 271, 280–81 (App.Ct.1978); *Broussard v. Continental Oil Co.*, 433 So.2d 354 (La.App. 3rd Cir.) writ den., 440 So.2d 726 (1983); and the cost of improving the strength or mode of the warning. *Dougherty v. Hooker Chem. Corp.*, 540 F.2d 174, 179 (3rd Cir.1976); *Broussard*, supra at 358. See also cases touching on several of these factors: [*Chappuis v. Sears, Roebuck & Co.*, 358 So.2d 926 (La. 1978)]; *Walker v. Maybelline*, 477 So.2d 1136 (La.App. 1st Cir.) writ den., 481 So.2d 1333 (La.1986); *Quattlebaum v. Hy-Reach Equipment, Inc.*, 453 So.2d 578 (La.App. 1st Cir.) writ den., 458 So.2d 474 (1984). See Sales, Duty to Warn and Instruct For Use In Strict Tort Liability 13 St. Mary's L.J., 521, 551–56 (1981); Restatement of Torts 2d § 402A, comment K.

*Bloxom v. Bloxom*, 512 So.2d 839, 844 (La. 1987).

"Under the 'failure to warn' theory of liability, the plaintiff can introduce scientific data, current research, and other technological advances presumably accessible to the manufacturer during the time the product was placed into commerce in order to establish that the manufacturer breached its duty." *Asbestos v. Bordelon, Inc.*, 96-0525 (La. App. 4 Cir. 10/21/98), 726 So.2d 926, 954 (citing *Halphen I*, 484 So.2d at 114–115).

> [A] product which contains an inherent danger that is not obvious or exposed to the ordinary consumer who normally uses the product must also contain a warning that must be *adequately worded* and *adequately placed*. It is only when those hazards are obvious and expected, or when the consumer is distinctly aware of those hazards (sophisticated user) that a warning is not required.

*Id.* at 955. "Once the trier of fact determines that the inherent danger is not obvious, and the consumer is not aware of or trained to detect that danger, then the warning, or lack thereof, must be scrutinized." *Id.* (citing *Clark v. Jesuit High Sch. of New Orleans*, 572 So.2d 830 (La. App. 4 Cir. 1990), *writ denied*, 576 So.2d 48 (La. 1991)).

> Therefore, the warning must be (1) properly worded to signify the intensity of the inherent danger in the product; (2) properly placed on the product so that the consumer cannot avoid seeing it; and (3) it must convey to the consumer that injury or damage can result from a normal or intended use of the product. [*Clark*, 572 So.2d at 830.] The manufacturer can then present evidence to show its product either did not require a warning or that the warning that was provided was adequately worded or placed. *Id.*

*Bordelon, Inc.*, 726 So.2d at 955.

In *Bordelon, Inc.*, the warning on the asbestos product complied with OSHA standards, saying: "Caution—Product contains asbestos fiber. Inhalation of dust in excessive quantities over long periods of time may be harmful. Avoid breathing dust. If adequate ventilation is not possible, wear respirators approved by the U.S. Bureau of Mines for Pneumoconiosis producing dust." *Id.* at 956. The Louisiana Fourth Circuit Court of Appeal found that even though this warning complied with OSHA standards, it was not detailed enough considering the manufacturer's knowledge of the hazards of asbestos at the time. *Id.* Other factors weighed against the adequacy of the warning, including the placement of the warning label on the packaging. *Id.*

UCC does not argue that Mr. Alford was a sophisticated user, or that the inherent danger was obvious. It simply argues that, because the warning was OSHA compliant, it was sufficient. (Doc. 128-3 at 3–4.) As shown by *Bordelon, Inc.*, an OSHA compliant warning is not per se adequate. The adequacy of the warning depends on a number of factors, such as the ones outlined in *Bloxom* above. The severity of the danger of exposure to asbestos and the intensity and form of the warning weigh against UCC.

The Louisiana Supreme Court has recognized that asbestos is inherently dangerous and is unreasonably dangerous per se. *Halphen v. Johns-Maville Sales Corp.*, 788 F.2d 274, 275 (5th Cir. 1986) ("*Halphen* II") (citing *Halphen* I, 484 So.2d 110). UCC likely had knowledge that asbestos was dangerous in March 1969, as shown in the letter from Calidria Asbestos, a UCC company, to Montello, Incorporated, discussing the warning that would go on the asbestos product packaging. (Doc. 138-3 at 2–3.) The warning on UCC's asbestos products was: "Caution. Contains Asbestos Fibers. Avoid Creating Dust. Breathing May Cause Serious Bodily Harm." (Myers Affidavit, Doc. 128-7 at 4, ¶ 14.)

Viewing this evidence in a light most favorable to Plaintiffs, a reasonable jury could find that UCC did not adequately warn purchasers and end-users that its asbestos products were dangerous. The letter references the warning label, calling it "the most innocuous that [they] could devise . . . ." (Doc. 138-3 at 2.) The language of the warning is similar to that in *Bordelon, Inc.*, which the court recognized was not detailed enough to be adequate. 726 So.2d at 956. Further, exposure to asbestos is highly dangerous and a reasonable jury could conclude that the language on the warning label was deficient. Other factors, like the cost of issuing stronger warning, could weigh in favor of Plaintiffs. This is a genuine issue of material fact that must be resolved by the factfinder at trial. Therefore, UCC's *Motion for Partial Summary Judgment* will be denied on this ground.

### v. Failure to Properly Package

Finally, UCC argues that there is no evidence that it failed to properly package its asbestos products. (Doc. 128-3 at 9.) This issue is properly considered on summary judgment, as "Rule 56(a) authorizes a party to move for summary judgment 'identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.' " 10B Mary Kay Kane & Adam N. Steinman, *Fed. Prac. & Proc. Civ.* § 2736 (4th ed.). Failure to properly package is a part of Plaintiffs' negligence and strict liability claim against UCC. (Doc. 29 at 5–7.) Thus, dismissal of the failure to properly package claim would dismiss part of Plaintiffs' negligence and strict liability claim.

Plaintiffs offered little to no argument on the merits, simply saying "Plaintiffs' packaging allegation encompass[es] more than simply 'the manner in which the bag was opened.' " (Doc. 138 at 18.) Mr. Alford testified that open bags of asbestos drilling mud additives were stacked on the oil rig, causing the area to be dusty, which can cause significant asbestos exposure. (*Id.* at 18–

19.) Plaintiffs cite to their industrial hygienist Kenneth Garza's report, arguing that this supports their claim that failure to properly package contributed to Mr. Alford's exposure. (*Id.* at 19.) However, this report does not attribute Mr. Abshire's exposure to a lack of proper packaging. (Doc. 138-6 at 4–6.) The report states, "[b]ased on my review of the case-specific information Mr. James Alford was exposed to asbestos, personally or as a bystander, during the removal of gaskets with scrapers and grinders; the repair & maintenance of friction materials, including grinding; and the dumping of drilling mud additives." (*Id.* at 4.) Likewise, Dr. Finkelstein's report does not link Mr. Alford's exposure to the packaging of the asbestos products. (Doc. 138-7.)

On summary judgment, if the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.' " *Matsushita Elec. Indus. Co.,* 475 U.S. at 586–87 (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted). Here, UCC has shown that there is no genuine issue of material fact regarding Plaintiffs' failure to properly package claim, and Plaintiffs have not provided specific facts that show a genuine issue for trial. Plaintiffs' experts have not identified the packaging of UCC's products as a contributing factor to Mr. Alford's exposure, and there is no evidence that the products played a role in Mr. Alford's exposure. Therefore, the *Motion for Partial Summary Judgment* will be granted on this ground, and Plaintiffs' failure to properly package claim will be dismissed.

IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Motion for Partial Summary Judgment* (Doc. 128) filed by defendant Union Carbide Corporation is **GRANTED IN PART and DENIED IN PART**.

**IT IS FURTHER ORDERED** that the *Motion* is **GRANTED** as to Plaintiffs' failure to properly package claim against Union Carbide Corporation. This claim is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the *Motion* is **DENIED AS MOOT** as to Plaintiffs' take-home exposure and lost earnings and earning capacity claims against Union Carbide Corporation. These claims are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the *Motion* is **DENIED** in all other respects.

Signed in Baton Rouge, Louisiana, on February 12, 2025.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**